UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| FBCC CITYPOINT LP, | § | No.  1:22-cv-01272-DAE |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | |
| | § | |
| THE CITY OF AUSTIN and JESÚS | § | |
| GARZA, DANIEL WORD, JOSE | § | |
| ROIG, and MATTHEW NORIEGA, | § | |
| IN THEIR OFFICIAL CAPACITIES | § | |
| *Defendants*. | § | |

<u>ORDER ON SUMMARY JUDGMENT</u>

Before the Court are (1) Plaintiff FBCC CityPoint, LP ("FBCC" or "Mueller Flats") Motion for Partial Summary Judgment (Dkt. # 82), filed on August 9, 2024; and (2) Defendants City of Austin, Jesús Garza, Daniel Word, José Roig and Matthew Noriega's (collectively "City") Motion for Summary Judgment (Dkt. # 85), filed on August 22, 2024.  On August 23, 2024, the City filed its response to FBCC's motion.  (Dkt. # 86.)  On August 30, 2024, FBCC filed its reply in support.  (Dkt. # 87.)  On August 30, 2024, FBCC filed a response to the City's motion.  (Dkt. # 88.)  On September 13, 2024, the City filed its reply in support.  (Dkt. # 91.)

The Court finds these matters suitable for disposition without a hearing.  Upon careful consideration of the memoranda filed in support of and

against the motions and the corresponding exhibits, the Court **DENIES** FBCC's

Motion for Partial Summary Judgment (Dkt. # 82) and **GRANTS** the City's

Motion for Summary Judgment (Dkt. # 85) for the following reasons.

<u>BACKGROUND</u>

This case involves the City of Austin's issuance of code violations

against Mueller Flats for property damage allegedly suffered as a result of Winter

Storm Uri in 2021.  As a result of numerous existing violations, the City added

Mueller Flats to its "Repeat Offender List."  (Dkt. # 12 at 2.)  In this lawsuit,

FBCC specifically challenges the Repeat Offender Program ("ROP"), which is

contained in City Ordinance No. 20130926-012.  (Dkt. # 82 at 1.)

FBCC CityPoint, LP is a limited partnership that owns and manages

Mueller Flats Apartments ("Mueller Flats").  (Dkt. # 12 at 2.)  Mueller Flats is a

nearly 400-unit apartment complex in north central Austin.  (<u>Id.</u> at 3.)  During

Winter Storm Uri ("Uri"), Mueller Flats suffered approximately 700 separate water

leaks throughout its apartment complex and its boilers were also damaged,

rendering them inoperable and preventing Mueller Flats from providing hot water

to apartment residents.  (<u>Id.</u>)  After Uri, the City began serving notices of code

violations found at Mueller Flats regarding storm-related damage.  (Dkt. # 82 at 3.)

Mueller Flats was placed on the City's ROP shortly thereafter.  (<u>Id.</u> at 4.)

The City's ROP is a registration program for rental properties with repeated violations of the City's health and safety requirements. (Dkt. # 85 at 2.) The program is intended to "protect the health and safety of rental unit dwellers in Austin." (Dkt. # 85-1 at 3.) Under ROP, if a property meets a "2-5-2 criteria," it must register with the program. (Dkt. # 85 at 3.) Under the "2-5-2 criteria," registration is required if: (1) two or more separate notices of violation are issued for the same property within a consecutive 24-month period and the owner fails to correct the violations within the required time period; (2) five or more separate notices of violation are issued on separate days for the same property within a consecutive 24-month period, regardless of whether the owner of the property corrects the violations within the required time period; or (3) two or more citations are issued for the same property within a consecutive 24-month period. (Dkt. # 85-1 at 22.) If a rental property is found to meet the "2-5-2 criteria," then a ROP Committee meets approximately quarterly to vote on whether identified properties should be required to register with ROP. (Dkt. # 85 at 3–4.)

If the ROP Committee votes "yes" for a property, the code official then provides written notice to the property owner that ROP registration is required. (Id. at 4.) The owner may appeal in writing to the code official within 10 days of the notice, which stays the ROP registration requirement. (Id.) At a ROP Appeal Panel hearing, a Code inspector presents the history of violations of the

property, and the property owner may present their side to the Panel.  (Id.)  If a

property owner is required to register in the ROP, the owner must pay a registration

fee and post signs on their property with specific information about the ROP.  (Id.

at 4–5.)  The rental registration of a ROP property may be suspended if the

property is declared substandard or dangerous, the ROP registrant fails to timely

comply with a NOV, fails to comply with ROP or permitting requirements or fails

to pay the annual fee.  (Id. at 5.)

On March 25, 2021, the City's ROP Committee met and discussed

Mueller Flats's violation history and inclusion in the ROP, along with 10 other

properties.  (Dkt. # 85 at 9.)  At that meeting, the Committee unanimously voted to

include Mueller Flats on ROP based on at least five notices of violation being sent

on different days in a 24-month period.  (Id.)  It was determined that Mueller Flats

met the "2-5-2 criteria," although one of the violations presented was Uri-related

and was not counted per a directive from then-Code Department Director José

Roig, who had determined Uri-related violations would not be counted for

purposes of ROP qualification.  (Id.)  FBCC, through its apparent owner Cary

Krier, appealed this determination.  (Id.)  The Appeal Panel hearing took place

remotely on May 10, 2021 before a three-member panel: Assistant Director Elaine

Garrett, Assistant Director Daniel Word, and Business Process Consultant Senior

Ken Garcia.  (Id. at 10.)

Around the same time, the City also escalated its enforcement efforts against Mueller Flats by bringing notices of violation to the City's Building and Standards Commission ("BSC"). (Id. at 11.) On May 13, 2021, the BSC held a hearing regarding the notices of violation served on Mueller Flats and issued enforcement orders regarding the code violations. (Id.) The following month, FBBC sued the City in state district court to challenge the BSC order. (Dkt. # 85-1 at 273–95.)

In September 2022, FBCC's first lawsuit against the City was tried in state court. (Dkt. # 86 at 4.) In October 2022, the court entered a Final Judgment in favor of FBCC. (Dkt. # 86-1 at 111.) That final judgment overturned orders by the City's BSC that directed Plaintiff to repair post-Uri code violations on penalty of accruing fines. (Id.) Neither side appealed the final judgment. (Dkt. # 86 at 4.)

On December 5, 2022, FBCC filed this instant suit against the City of Austin and various City officials seeking to recover damages from the City, including, among other things, lost rental income at Mueller Flats following Uri. (Dkt. # 1.) On August 9, 2024, FBCC filed its motion for partial summary judgment. (Dkt. # 82.) On August 22, 2024, the City filed its motion for summary judgment. (Dkt. # 85.) On September 24, 2024, Defendants filed a motion to strike the expert testimony of John Thompson regarding lost rental income. (Dkt. # 94.) On November 5, 2024, Magistrate Judge Mark Lane entered an order

granting in part and denying in part the motion to strike.  (Dkt. # 99.)  The pending

motions are therefore ripe for consideration.

LEGAL STANDARD

"Summary judgment is proper when there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law."

Griggs v. Brewer, 841 F.3d 308, 311–12 (5th Cir. 2016); see also Fed. R. Civ. P.

56(a).  Further, "summary judgment is appropriate when there is no genuine issue

of material fact and only a question of law is presented."  McDaniel v. Anheuser-

Busch, Inc., 987 F.2d 298, 301 (5th Cir. 1993).  In deciding a summary judgment

motion, the court draws all reasonable inferences in the light most favorable to the

nonmoving party.  Wease v. Ocwen Loan Servicing, LLC, 915 F.3d 987, 992 (5th

Cir. 2019).

On cross-motions for summary judgment, the court examines each

party's motion independently, viewing the evidence and inferences in the light

most favorable to the nonmoving party.  White Buffalo Ventures, LLC v. Univ. of

Tex. at Austin, 420 F.3d 366, 370 (5th Cir. 2005).  "Cross-motions for summary

judgment will not, in and of themselves, warrant the granting of summary

judgment unless one of the parties is entitled to judgment as a matter of law. . . ."

Joplin v. Bias, 631 F.2d 1235, 1237 (5th Cir. 1980).  Each party may move for

summary judgment using different legal theories that rely on different sets of

material facts.  Bricklayers, Masons & Plasterers Int'l Union of Am. v. Stuart Plastering Co., 512 F.2d 1017, 1023 (5th Cir. 1975).  Nonetheless, cross-motions for summary judgment may be probative of the absence of a factual dispute when they reveal a basic agreement concerning what legal theories and material facts are dispositive.  See id.

## DISCUSSION

FBCC seeks partial summary judgment on its claims regarding whether the City of Austin's ROP is preempted by Texas law and its remaining constitutional claims.  (Dkt. # 74.)  The City seeks summary judgment on all claims but initially argues that FBCC's claims are barred by res judicata.  (Dkt. # 95.)  Because the application of res judicata will determine whether FBCC's claims are barred, the Court addresses this argument first.

## I.   Res Judicata

"Under res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  Allen v. McCurry, 449 U.S. 90, 94 (1980).  Res judicata "insures the finality of judgments and thereby conserves judicial resources and protects litigants from multiple lawsuits."  United States v. Shanbaum, 10 F.3d 305, 310 (5th Cir. 1994).  "A federal court, asked to give res judicata effect to a state court judgment, must apply the res judicata principles of the law of the state

whose decision is set up as a bar to further litigation." Guardino v. Hart, No. 22-20278, 2023 WL 3818378, at *3 (5th Cir. June 5, 2023) (quoting Hernandez v. City of Lafayette, 699 F.2d 734, 736 (5th Cir. 1983)).

Under Texas law, res judicata requires "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." Amstadt v. U.S. Brass Corp., 919 S.W.2d 644, 652 (Tex. 1996). When those elements are satisfied, res judicata "prohibits either party from raising any claim or defense in the later action that was or could have been raised in support of or in opposition to the cause of action asserted in the prior action." Shanbaum, 10 F.3d at 310.

The City argues FBCC's claims are barred by res judicata because FBCC previously sued the City over its code enforcement and obtained a final judgment in its favor but failed to obtain relief on the related claims it raises here although it could have litigated those claims in that case. (Dkt. # 85 at 13.)

FBCC responds that res judicata does not apply because, in the prior lawsuit, the district court's jurisdiction necessarily was limited to adjudicating the legality of the specific orders FBCC contested. (Dkt. # 88 at 9.) FBCC contends the district court also did not have jurisdiction to consider whether the ROP violated FBCC's constitutional rights or any other claims at issue in this lawsuit;

instead, the state district court was limited to determine whether the fines issued by the BSC were illegal, which is not at issue here.  (Id.)

The parties do not dispute the first two elements of res judicata.  It is undisputed that the 98th District Court of Travis County, Texas, issued a final judgment in favor of FBCC on October 17, 2022.  (Dkt. # 85-1 298–99.)  It is also undisputed that FBCC was the named plaintiff in the state case, and the BSC, an arm of the City under Texas Local Government Code, was the named defendant.  (Dkt. # 85 at 15.)  Therefore, the Court turns to the remaining element.

A.    Transactional Approach

Texas applies the transactional approach in determining whether a claim could have been litigated in a prior suit, which bars a subsequent suit if it "arises out of the same subject matter of a previous suit and which through the exercise of diligence, could have been raised in a prior suit."  Barr v. Resolution Tr. Corp., 837 S.W.2d 627, 628-31 (Tex. 1992).  Determining the scope of the "subject matter" or "transaction" of the prior suit requires "an analysis of the factual matters that make up the gist of the complaint, without regard to the form of action."  Id. at 630.

Courts are required to review the facts contained in each complaint to determine whether they are part of the same transaction or series of transactions, which arise from the same nucleus of operative facts.  Davis v. Dallas Area Rapid

9

Transit, 383 F.3d 309, 313 (5th Cir. 2004).  The courts consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage."  Id. (internal quotation marks omitted).

      In the state district court petition, filed on June 17, 2021, FBCC alleged "the Commission began taking enforcement actions against Mueller Flats in connections with the notices of violation issued by the City's inspectors—even though the vast majority of those notices of violation could not be closed until the City issued the relevant permits."  (Dkt. # 85-1 at 279.)  FBCC did not allege any specific facts regarding the "Repeat Offender Program," and instead generally made allegations concerning the City's "enforcement actions."  However, as the City highlights, FBCC was already on notice of its ROP status as of March 2021—which is before the filing of the state district court petition—for violations relating to Uri damage to the property.  (Dkt. # 85 at 17.)

      At the state district court, FBCC argued: (1) because it is impossible for FBCC to comply with the notices of violation issued by the City until the City issues the relevant permit, the violations assessed by City officials and the Commission are illegal; (2) "the orders and notices of violation violate FBCC's due process rights"; (3) it was entitled to an injunction preventing the City from imposing further fines under these notices of violation and orders as well as

"disgorgement and/or restitution of any fines assessed as to these units"; and (4) the City's illegal imposition of a duty to repair on FBCC has been preempted by the Texas Legislature through the Tex. Prop. Code § 92.054 because the "City is penalizing FBCC for failing to repair damage caused by a winter storm—insured casualty losses—for which FBCC had yet to receive insurance proceeds."  (Dkt. # 85-1 at 292, 301–02.)

In this federal lawsuit, FBCC is arguing that the "punishments on Mueller Flats" for "code violations caused by the winter storm"—including adding the complex to ROP in March of 2021—are unconstitutional for various reasons. (Dkt. # 12 at 8–10.)  FBCC asserts state and federal constitutional due process violations in this case as well.  FBCC makes a preemption claim against ROP by citing the same property code authority as it did in the state court.  The allegations in both the state court petition and Amended Complaint in this lawsuit arise from the same operative facts of the City's notices of code violations relating to winter storm damage at Mueller Flats around early 2021.  (Id. at 2–8.)

The Court finds FBCC's present claims all stem from the same subject matter as those litigated before the Travis County district court—City code enforcement actions against Mueller Flats after Uri.  Accordingly, there is sufficient identity of claims arising from the same nucleus of operative facts to satisfy the final requirement for res judicata.

11

B.    <u>State Court's Jurisdiction</u>

Even if the subject matter is the same in both suits, FBCC contends that it could not have raised its ROP arguments in its earlier lawsuit because the state district court lacked jurisdiction under § 54.039(f) of the Texas Local Government Code to hear the claims it now makes.  (Dkt. # 88 at 10.)

Texas Local Government Code § 54.039(a) provides that an owner may present a petition "setting forth that the decision is illegal, in whole or in part, and specifying the grounds of illegality."  Tex. Gov't Code § 54.039(a).  The district court's "review shall be limited to a hearing under the substantial evidence rule" whereby "[t]he court may reverse or affirm, in whole or in part, or may modify the decision brought up for review."  <u>Id.</u> at § 54.039(f).  FBCC contends the state district court does not also have the power to declare relief beyond that specifically related to the decision under review, including to award damages to the aggrieved owner.  (Dkt. # 88 at 10.)

The City replies that state district courts can, and do, hear constitutional claims in cases brought by aggrieved property owners challenging municipal orders under § 54.039 of the Texas Local Government Code.  (Dkt. # 91 at 2.)  For example, in <u>City of Dallas v. Stewart</u>, the Texas Supreme Court noted that constitutional claims could be asserted for the first time in the state district court upon appeal of an agency order, notwithstanding the substantial evidence

rule.  City of Dallas v. Stewart, 361 S.W.3d 562, 579–80 (Tex. 2012); see also Hoppenstein Properties, Inc. v. City of Dallas, No. 3:21-CV-01172-K, 2022 WL 4538463, at *4 (N.D. Tex. Sept. 28, 2022).

FBCC also argues it "could not simply add additional claims to its administrative appeal in the district court" because of the "substantial evidence" review standard that applies to such adjudications.  (Dkt. # 88 at 10.)  However, the Fifth Circuit has noted that the standard of review is irrelevant to a prior suit's preclusive effect.  See, e.g., Cox v. Nueces Cnty., Tex., 839 F.3d 418, 420-21 (5th Cir. 2016) (finding that res judicata applied under Texas law where plaintiff did not bring federal constitutional claim in state court substantial-evidence review of civil service commission findings).

Similarly unavailing is FBCC's contention that he was unable to seek damages or an injunction in its state-court appeal.  (Dkt. # 88 at 9–10.)  Texas's transactional approach emphasizes an overlap in the "the factual bases, not the legal theories" or forms of relief presented in the cases to determine the applicability of res judicata.  Samuel v. Fed. Home Loan Mortgage Corp., 434 S.W.3d 230, 234 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing Pinebrook Props., Ltd. v. Brookhaven Lake Prop. Owners Ass'n, 77 S.W.3d 487, 496 (Tex. App.—Texarkana 2002, pet. denied)); see also Kinney v. BCG Att'y Search, Inc., No. 03-12-00579-CV, 2014 WL 1432012, at *10 (Tex. App.—Austin Apr. 11,

2014, pet. denied) (mem. op.) ("The fact that different forms of relief are sought in the two lawsuits is irrelevant, for if the rule were otherwise, litigation finally would end only when a party ran out of counsel whose knowledge and imagination could conceive of different theories of relief based upon the same factual background.") (internal citation removed).

FBCC relies on Whallon v. City of Houston to counter the application of res judicata.  (Dkt. # 88 at 9.)  In Whallon, the complex argued that the City of Houston was barred from bringing an action in district court because it first initiated proceedings before its Building and Standards Commission.  Whallon v. City of Houston, 462 S.W.3d 146, 157 (Tex. App. 2015).  However, the Court finds that Whallon's reasoning is inapplicable here.  Indeed, the Texas court noted that the City's pursuing a civil action in district court was not an "appeal" of any order related to the administrative proceeding, citing to Tex. Loc. Gov't Code §§ 54.039, 214.0012.  Whallon, 462 S.W.3d at 158.

Here, there was an appeal of a BSC issued order to a state district court.  That FBCC could have raised its additional, and unquestionably related, constitutional claims in its first lawsuit is also made evident through its inclusion of a due process claim regarding the City's enforcement actions in general.  (See Dkt. # 85-1 at 293) (FBCC arguing that "the orders and notices of violation violate FBCC's due process rights.")

Because the prior state-court action resulted in a final judgment on the merits, the involved parties are in privity, and the federal claims arise from the same subject matter as the state-court case, res judicata bars FBCC's current lawsuit.  The policy interests in finality, stability, and judicial economy also counsel in favor of the dismissal of FBCC's claims.  <u>Citizens Ins. Co. of Am. v. Daccach</u>, 217 S.W.3d 430, 449 (Tex. 2007).

CONCLUSION

For the reasons stated, the Court (1) **DENIES** FBCC's Motion for Partial Summary Judgment (Dkt. # 82) and (2) **GRANTS** the City's Motion for Summary Judgment (Dkt. # 85).  Plaintiffs' claims against the City are hereby **DISMISSED WITH PREJUDICE**.

The Clerk's Office is **INSTRUCTED TO ENTER JUDGMENT** and **CLOSE THE CASE**.

**IT IS SO ORDERED.**

**DATED:** Austin, Texas, March 14, 2025.

_____
David Alan Ezra
Senior United States District Judge

15